**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

PJ and RR Venture Cap, LLC,

                        Plaintiff,

                                                 Civ. No. 10-5014 (RHK/LIB)
                                                 **MEMORANDUM OPINION
                                                 AND ORDER**

v.

American States Insurance Company,

                        Defendant.

Scott M. Strand, Cahill Law Office, Moorhead, Minnesota, for Plaintiff.

Curtis D. Ruwe, Arthur, Chapman, Kettering, Smetak & Pikala, PA, Minneapolis, Minnesota, for Defendant.

**INTRODUCTION**

This action arises out of faulty construction work by Lopez Construction, Inc. ("Lopez"), resulting in a claim against a surety bond securing a contract of Lopez's. Ultimately, the costs to repair and complete Lopez's work under this secured contract (over a million dollars) were paid by Plaintiff PJ and RR Venture Cap, LLC ("PJ"), an indemnitor of the surety bond. PJ sought and obtained a default judgment against Lopez in state court. PJ then commenced the instant action against American States Insurance Company ("American"), Lopez's general-liability insurer, seeking a declaration that American is legally obligated to satisfy PJ's state-court judgment against Lopez. It now moves for summary judgment. For the reasons below, the Court will deny the Motion.

## BACKGROUND

The material facts are undisputed. In August 2004, the City of Moorhead hired Lopez, a construction company, to perform work related to underground utilities (e.g., sewer and water lines) for a development project known as Phase 2 – Southfield Addition. Lopez was to follow specifications prepared by Ulteig Engineers, Inc. ("Ulteig"), and Ulteig would oversee its work. Lopez was also required to obtain surety bonds securing its contract with Moorhead, and it obtained performance and payment bonds through Developer Surety & Indemnity Company ("DSIC").

The bonds were issued pursuant to an Indemnity Agreement (the "Agreement") previously executed by Lopez. Lopez was the "Principal" under the Agreement, and a number of individuals also signed it as "Indemnitors." The Indemnitors included Lopez's president, Jeffrey Lopez, its vice president, Jeffrey Mann, and each man's wife, all in their individual capacities. PJ, a venture capital company, also signed the Agreement as an Indemnitor. In relevant part, the Agreement provided:

> [Lopez] and each separate Indemnitor, jointly and severally, agree as follows:
>
> 1. Indemnification. In consideration of the execution and delivery by [DSIC] of a Bond or any Bonds on behalf of [Lopez], [Lopez] and Indemnitor[s] shall . . . indemnify and hold harmless [DSIC] from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon . . . which [DSIC] may sustain or incur by reason of or in consequence of the execution and delivery by [DSIC] of any Bond on behalf of [Lopez], whether or not [DSIC] shall have paid any amount on account thereof . . .

(Ruwe Aff. Ex. 2, at 1.)

At the time it contracted with Moorhead, Lopez was also insured under a standard Commercial General Liability ("CGL") insurance policy ("the Policy") issued by American. The Policy took effect on June 7, 2003, and remained effective until it lapsed on August 22, 2005. In relevant part, the Policy provided:

**1. Insuring Agreement:**

>   a. [Insurer] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage"[1] to which this insurance applies. We will have a right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the inured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply . . .
>
>   b. This insurance applies to . . . "property damage" only if:
>
>   (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
>   (2) The . . . "property damage" occurs during the policy period.

**2. Exclusions**

>   This insurance does not apply to:
>
>   **b. Contractual Liability:**
>
>   "[P]roperty damage" for which the insured is obligated to pay damages by reason of the assumption of a liability in a contract or agreement. This exclusion does not apply for liability for damages:

---

[1] The Policy defines "property damage" as:
>   A. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>   B. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Ruwe Aff. Ex. 9, at 14.) An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 13.)

3

>> (1) That the insured would have in the absence of the contract or agreement;
>
> * * *
>
> **j. Damage to Property:**
>
>> "Property damage" to:
>>
>>> (5) That particular part of real property on which you or any subcontractors working directly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>>>
>>> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Ruwe Aff. Ex. 9, at 1-2, 4.)

Lopez began to perform work under the Moorhead contract, but things did not go smoothly. The contract required it to complete all work by November 12, 2004; however, as of July 2005, its work was not completed and the project was "in trouble." (See Ruwe Aff. Ex. 4.) Sometime in mid-August 2005, Lopez abandoned work on the project entirely and ceased operating, and on August 22, 2005, its CGL Policy lapsed because it had not made the required premium payments.

After Lopez failed to complete its work under the contract, PJ retained contractors to finish the job and remediate the damage Lopez had caused in an attempt to avoid a claim against the DSIC bonds. Nonetheless, on January 29, 2007, Moorhead submitted a claim against the bonds to DSIC for just over one million dollars. This amount represented repairs, costs of paying other contractors to do work included under Lopez's contract, interest, fees, and other increased costs Moorhead incurred due to the delay.

Ultimately, PJ (an Indemnitor of the bonds under the Agreement) settled the claim against the bonds and paid the City's costs, totaling $1,128,569.44.

In the fall of 2009, PJ filed a lawsuit in Minnesota District Court in Cass County, seeking to recover the amounts it paid to the City from Lopez and some of the individual Indemnitors. Its complaint alleged:

> PJ Venture Cap has sustained significant damages relative to the subject project. These damages were sustained due to the conduct of Lopez Construction. PJ Venture Cap is entitled to *indemnification and/or contribution* from Lopez.
>
> PJ Venture Cap paid significant damages *as a result of an indemnity agreement* relative to the subject property. Jeffrey S. Lopez, John S. Lopez, Melissa Lopez, Jeffrey G. Mann and the Estate of Jacquelyn Mann are co-indemnitors on the indemnity agreement. PJ Venture Cap is entitled to contribution and/or indemnification from Lopez Construction [and the individual indemnitors listed above].

(Ruwe Aff. Ex. 6, ¶¶ V-VI (emphases added).) After filing its action, PJ contacted American, Lopez's general-liability insurer, notifying it of the pending action and providing documentation. PJ asserted that the CGL Policy provided coverage, and it styled its communications to American as a "notice of claim and demand." (See id. Ex. 7, at 1.) On February 2, 2010, American denied coverage under the Policy. It relied upon two exclusions—the contractual-liability exclusion, and the damage-to-property exclusion—as bases for its denial. Furthermore, it explained that PJ's complaint against Lopez stated claims based only in contribution and indemnity; in other words, it sought only "economic damage resulting from its obligation to reimburse the Performance and Payment Bond" rather than "damages because of 'property damage.'" (Strand Aff. Ex. D, at 5.) In American's view, such economic damages were not covered by the Policy.

5

A few months after this denial, on April 28, 2010, PJ filed an amended complaint in the state-court action. This amended complaint no longer alleged that PJ's damages resulted from the Indemnity Agreement but instead alleged negligence and property damage:

> Lopez Construction negligently performed work on the subject property. Such negligence resulted in significant property damage causing PJ Venture Cap to incur damages. . . .
>
> Lopez Construction's subcontractors negligently performed work on the subject property. Such negligence resulted in significant property damage causing PJ Venture Cap to incur damages. . . .

(Strand Aff. Ex. A. ¶¶ V-VI.) PJ wrote to American, expressly informing it of the amended complaint. Additionally, on May 14, 2010, Lopez sent a letter to American tendering the defense of the claim. A few weeks later, PJ informed American of its intent to pursue a default judgment against Lopez in the state-court action.

American maintained the position that there was no coverage under its Policy and did not defend Lopez in the state-court action, and PJ obtained a default judgment against Lopez on June 24, 2010. The state court found that Lopez had acted negligently, caused property damage, and was liable to PJ in the amount of $1,128,569.44. Six months later, PJ commenced the instant action, seeking a declaration that American is required to satisfy the state-court judgment against Lopez. It now moves for summary judgment on its claim.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

PJ argues that summary judgment is appropriate here because, as a matter of law, American is now prohibited from raising defenses to coverage since it failed to defend Lopez in the underlying state-court action.  It offers two arguments in support of this position.

First, it relies upon cases from other states (primarily Illinois) applying the so-called "estoppel doctrine."  These cases hold that, where a claim against an insured is even potentially covered, the insurer must either defend the claim under a reservation of rights or seek a declaratory judgment regarding coverage; failure to take one of these two steps may estop the insurer from raising defenses to coverage later.  E.g., Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust, 708 N.E.2d 1122, 1136 (Ill. 1999).  PJ urges this

Court to adopt such a rule to preclude American from denying coverage here.[2]

The Eighth Circuit and Minnesota courts have consistently held, however, that "estoppel cannot be used to expand or create insurance coverage" where it would not otherwise exist. Minn. Commercial Ry. Co. v. Gen. Star Indem. Co., 408 F.3d 1061, 1063 (8th Cir. 2005) (citing Shannon v. Great Am. Ins. Co., 276 N.W.2d 77, 78 (Minn. 1979)). There is a limited exception to this rule, permitting an insured to create coverage by estoppel where the insurer has assumed defense and controlled the litigation of a claim. See id. at 1063-64 (citations omitted). But this exception "is *not* applicable where the insurer has refused the defense of the insured." Id. (emphasis added) (citation omitted); accord Globe Indem. Co. v. Hansen, 231 F.2d 895, 906 (8th Cir. 1956) (finding it a "legal absurdity" to estop an insurer from denying liability based on its refusal to defend where it can show that coverage was excluded under the policy). Simply put, if American can show that the underlying claims against Lopez were in fact not covered under its Policy, it cannot be estopped from denying coverage (and thus forced to expand coverage beyond its Policy) simply because it did not defend Lopez.

PJ also relies on Parr v. Gonzalez, 669 N.W.2d 401 (Minn. Ct. App. 2003), to argue that American cannot deny coverage. Parr held that an insurer could not raise defenses that went to the *merits* of an underlying default judgment against its insured

---

[2] Whether Illinois law would apply as broadly as PJ posits is not clear. In Employers Insurance of Wasau, the Illinois Supreme Court noted that an insurer who "fails to take either of these steps *and is later found to have wrongfully denied coverage*" would be estopped from raising defenses to coverage. 708 N.E.2d at 1136 (emphasis added). Thus, even under this approach, it appears there is room for some later evaluation of the insurer's denial of coverage and its defenses thereto. Since the result PJ seeks is clearly *not* consistent with Minnesota law, however, the Court need not delve more deeply into the other states' laws that it cites.

after it failed to defend the insured in the underlying action.[3]  Yet Parr expressly noted that "a default judgment entered against the insured does not automatically establish coverage for the claim because critical coverage issues may not be resolved in the actions underlying the insured's liability for a judgment."  Id. (citing Silicone Implant Ins. Coverage Litig., 652 N.W.2d 46, 57 (Minn. Ct. App. 2002), rev'd in part on other grounds, 667 N.W.2d 405 (Minn. 2003)).  Here, the default judgment in the underlying action was based on findings that Lopez "negligently performed work on the subject project," which resulted in "significant property damage."  (Strand Aff. Ex. B, at 1.)  Thus, under Parr, American may not be able to argue that Lopez was not negligent or did not cause property damage.  Yet its defenses do not go to these issues.  Rather, it argues there is no coverage for three reasons—(1) PJ has not shown that the damage occurred within the Policy period; (2) the damages were not covered "occurrences" under the Policy; and (3) the Policy's business-risk exclusions (Exclusions j(5) and j(6)) apply to bar coverage.  Since these coverage defenses do not go to the merits of the default judgment, Parr does not preclude them.[4]

In short, the Court is unpersuaded by either of PJ's arguments that American may

---

[3] For example, if a default judgment of negligence is entered against the insured, the insurer (who failed to defend) may not later avoid coverage by arguing that its insured did not cause the damage.  E.g., Parr, 669 N.W.2d at 405 ("Because causation is an element of a prima facie case of negligence, the issue of causation in this case involves a defense extending to the merits of appellants' negligence claim in the underlying action.").

[4] At oral argument, counsel for PJ argued that Parr should operate differently here because this case did not involve "all or nothing" coverage defenses, but instead involved at least some covered losses and some possibly non-covered losses.  American flatly disagrees with this view, however, and it does not acknowledge that any of the damages at issue in the underlying action were covered by its Policy.

9

not raise defenses to coverage due to its refusal to defend Lopez in the underlying action. Since this is the entire premise of PJ's Motion for Summary Judgment, its Motion will be denied. The merits of the coverage dispute have yet to be fully teed up for resolution, however, so the Court will not address them at this juncture.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 16) is **DENIED**.

Dated: July 7, 2011                                    s/ Richard H Kyle
                                                       RICHARD H. KYLE
                                                       United States District Judge